UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

MARK DOWLING THOMAS                         CIVIL ACTION

VERSUS                                      19-11853

SEABIRD EXPLORATION                         SECTION: "J" (1)
CYPRUS LTD., ET AL.

## ORDER & REASONS

Before the Court are a *Motion for Summary Judgment* **(Rec. Doc. 11)** filed by Defendants Seabird Exploration Cyprus Ltd. ("Seabird") and Osprey Navigation Co. Inc. ("Osprey"), an opposition thereto (Rec. Doc. 16) filed by Plaintiff Mark Thomas, and a reply (Rec. Doc. 21) by Defendants. Having considered the motion and memoranda, the record, and the applicable law, the Court finds that the Motion should be **DENIED**.

## FACTS AND PROCEDURAL BACKGROUND

This litigation arises from injuries allegedly sustained by Plaintiff on October 19, 2018, while working aboard the R/V OSPREY EXPLORER, which was owned by Defendant Osprey and operated by Defendant Seabird. Plaintiff alleges he was injured when he went to inspect seismic cables on the back deck of the vessel in substandard weather conditions and slipped on the wet deck. As a result of his injury, Plaintiff was forced to leave the vessel and underwent arthroscopic surgery to his right knee, which will require future care and surgery.

Plaintiff is a seismic navigator. Since 2013, Plaintiff has not been formally employed with a seismic company but has been contracting his services to various vessels.[1] To find job opportunities, Plaintiff uses employment agencies, including two firms called Nautech and Newton Subsea, Ltd ("Newton").[2] Between 2015 and 2017, Plaintiff worked seven jobs for two owners on three vessels through Nautech.[3] He then worked two jobs for Newton in 2018. The first job was 50 days aboard the POLAR MARQUIS, owned by Shearwater GeoServices, from May 11 to June 29, 2018.[4] His second job for Newton was aboard the OSPREY EXPLORER.

Plaintiff boarded the OSPREY EXPLORER on September 26, 2018, and was on the vessel continuously until his accident on October 19.[5] Plaintiff was briefly taken ashore to be seen by a doctor and then returned to the vessel and continued to work through November 9, 2018.[6] Plaintiff thus worked approximately 44 or 45 days aboard the OSPREY EXPLORER. Before commencing the job, Plaintiff signed an employment agreement with Newton,[7] and he was paid for his work by Newton.[8]

Plaintiff filed suit against Seabird and Osprey on July 25, 2019, asserting negligence and unseaworthiness claims under the Jones Act and general maritime law. Defendants filed the instant motion for summary judgment on August 7, 2020. The motion is before the Court on the briefs and without oral argument.

---

[1] (Deposition of Mark Dowling Thomas, Rec. Doc. 11-2, at 11).
[2] *Id.* at 9-10, 12-13.
[3] *Id.* at 14-19.
[4] *Id.* at 19-20.
[5] *Id.* at 20; (*see also* Rec. Doc. 16-3, at 2) (stating that Plaintiff had spent 24 days at the work site as of October 19, 2018). The Court notes that the transcript says "December" but believes this to be a typo.
[6] (Rec. Doc. 11-2, at 20; Rec. Doc. 16-2, at 4).
[7] (Rec. Doc. 11-5).
[8] (Rec. Doc. 16-2, at 3-4).

## **LEGAL STANDARD**

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing Fed. R. Civ. P. 56); *see Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir. 1994). When assessing whether a dispute as to any material fact exists, a court considers "all of the evidence in the record but refrains from making credibility determinations or weighing the evidence." *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398 (5th Cir. 2008). All reasonable inferences are drawn in favor of the nonmoving party, but a party cannot defeat summary judgment with conclusory allegations or unsubstantiated assertions. *Little*, 37 F.3d at 1075. A court ultimately must be satisfied that "a reasonable jury could not return a verdict for the nonmoving party." *Delta*, 530 F.3d at 399.

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by merely pointing out that the evidence in the record is insufficient with respect to an essential element of the nonmoving party's claim. *See Celotex*, 477 U.S. at 325. The burden then shifts to the nonmoving party, who must, by submitting or referring to evidence, set out specific facts showing that a genuine issue exists. *See id.* at 324. The nonmovant may not rest upon the pleadings but must identify specific facts that establish a genuine issue for trial. *See id.* at 325; *Little*, 37 F.3d at 1075.

## **DISCUSSION**

Defendants seek summary judgment on Plaintiff's Jones Act and unseaworthiness claims, arguing that he is not a seaman because he lacks a substantial connection to the OSPREY EXPLORER or an identifiable fleet of vessels under their ownership and control. To qualify as a seaman, a plaintiff must show (1) that his duties "contribute[d] to the function of the vessel or to the accomplishment of its mission," and (2) that he has "a connection to a vessel in navigation (or to an identifiable group of such vessels) that is substantial in terms of both its duration and nature." *Chandris v. Latsis*, 515 U.S. 347, 376 (1995). Defendants thus contend that Plaintiff cannot satisfy the second prong.

The purpose of the second *Chandris* prong is "to separate the sea-based maritime employees who are entitled to Jones Act protection from those land-based workers who have only a transitory or sporadic connection to a vessel in navigation." *Id.* at 368. Seaman status is not a function of where the employee's injury occurred, *see id.* at 361, the particular work being performed when the injury was sustained, *see id.* at 368, or the injured employee's job title, *see Sw. Marine, Inc. v. Gizoni*, 502 U.S. 81, 89 (1991). Instead, what matters is "the nature of the seaman's service, his status as a member of the vessel, and his relationship as such to the vessel and its operation in navigable waters." *Chandris*, 515 U.S. at 359-60 (quoting *Swanson v. Marra Bros., Inc.*, 328 U.S. 1, 4 (1946)). Courts must examine the "total circumstances of an individual's employment" in order to determine "whether the worker in question

is a member of the vessel's crew or simply a land-based employee who happens to be working on the vessel at a given time." *Id.* at 370.

With respect to the durational component of the second prong, the Fifth Circuit has established an "appropriate rule of thumb" for determining whether an employee possess the required substantial connection to a vessel in navigation. Ordinarily, if a worker spends less than 30 percent of his time in service of a vessel, he should not qualify for seaman status. *See Becker v. Tidewater, Inc.*, 335 F.3d 376, 388-89 (5th Cir. 2003). The same rule applies in cases involving an identifiable fleet of vessels as opposed to an individual vessel. *See Roberts v. Cardinal Servs., Inc.,* 266 F.3d 368, 377 (5th Cir. 2001) ("[W]hen a group of vessels is at issue, a worker who aspires to seaman status must show that at least 30 percent of his time was spent on vessels, every one of which was under his defendant-employer's common ownership or control."). "Generally, the status of an employee who splits time between land and a vessel is 'determined in the context of his entire employment with his current employer.'" *Wilcox v. Wild Well Control, Inc.*, 795 F.3d 531, 536 (5th Cir. 2015) (quoting *Barrett v. Chevron U.S.A., Inc.*, 781 F.2d 1067, 1075 (5th Cir. 1986) (en banc)); *see also Chandris*, 515 U.S. at 366-67.

Defendants contend that Plaintiff is not a seaman because, in the four years prior to and including his assignment aboard the OSPREY EXPLORER, Plaintiff was assigned to work aboard six different vessels owned by five different owners and therefore lacks a substantial connection to a vessel or fleet of vessels under their ownership and control. Plaintiff, on the other hand, argues that Newton was his

employer at the time of the incident and therefore only his work for Newton is relevant here. Plaintiff further contends that he spent over 30 percent of his time employed with Newton aboard Defendants' vessel, thus satisfying the substantial connection prong.

Defendants fail to present any legal basis for including Plaintiff's prior work while employed by Nautech in the substantial connection analysis. *Chandris* directs that the analysis be conducted with respect to a worker's "current" or "particular employer." 515 U.S. at 366, 372. The Supreme Court clarified this in *Harbor Tug & Barge Co. v. Papai*, explaining that "the words 'particular employer' give emphasis to the point that the inquiry into the nature of the employee's duties for seaman-status purposes may concentrate on a narrower, not broader, period than the employee's entire course of employment with his current employer." 520 U.S. 548, 556-57 (1997). Thus, the Supreme Court in *Harbor Tug* specifically rejected the amalgamation-of-employers theory advanced by Defendants. *See id.* at 558.

The plaintiff in *Harbor Tug* was a deckhand hired by the defendant through a union hiring hall to paint a docked vessel. *Id.* at 551. He argued that he satisfied the second *Chandris* prong based on his employment with various vessels, owned by three different employers, that he had obtained through the hiring hall in the two years before his injury. *Id.* at 555. The Court rejected this argument, holding that "prior employments with independent employers" should not be considered in the seaman-status inquiry because doing so "would undermine 'the interests of employers and maritime workers alike in being able to predict who will be covered by the Jones Act.'"

6

*Id.* at 558 (quoting *Chandris,* 515 U.S. at 363). The Court then considered his prior employment with only the defendant and held that he had not satisfied the nature component of the second prong because the evidence showed only that he had performed maintenance work while the vessel was docked. *Id.* at 559.

Here, the record reflects that Plaintiff was employed by Newton at the time of the incident. He had signed an employment agreement with Newton[9] and was paid for his work by Newton.[10] The record further reflects that Plaintiff spent almost 50 percent of his time working for Newton aboard Defendants' vessel: he spent approximately 44 or 45 out of 95 days aboard the OSPREY EXPLORER,[11] which is well above the Fifth Circuit's 30 percent requirement. *See Becker*, 335 F.3d at 388-89. Viewing the evidence in the light most favorable to Plaintiff, a reasonable factfinder could find that Plaintiff has a substantial connection to the OSPREY EXPLORER and therefore is a seaman.

Defendants nonetheless contend that Newton is not Plaintiff's employer but is merely a "manpower agency" that provides Plaintiff with temporary assignments, similar to the union hiring hall in *Harbor Tug*. However, if the Court were to accept this argument, then the only conclusion the Court can draw is that Defendants are Plaintiff's employers, thus granting him seaman status, because they have failed to present any evidence of any other employer. While Defendants point out that Plaintiff has not listed Newton as his employer on his resume, his contract with Newton is

---

[9] (Rec. Doc. 11-5).
[10] (Rec. Doc. 16-2, at 3-4).
[11] (Rec. Doc. 11-2, at 20; Rec. Doc. 16-2, at 3-4; *see also* Rec. Doc. 16-3, at 2).

7

clearly titled "Employment Agreement" and lists Plaintiff as "Employee."[12] At most, Plaintiff's resume creates a genuine issue of material fact inappropriate for resolution on summary judgment.

Finally, to the extent Defendants argue that Plaintiff is not a seaman because he was a member of the seismic crew rather than the marine crew, this argument is unavailing because Plaintiff's work as a seismic navigator clearly "contribute[d] to the function of the vessel or to the accomplishment of its mission" where the vessel was a research vessel collecting seismic data. *Chandris*, 515 U.S. at 368 (internal quotation marks and citation omitted).

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' *Motion for Summary Judgment* **(Rec. Doc. 11)** is **DENIED**.

New Orleans, Louisiana, this 23rd day of September, 2020.

_____
CARL J. BARBIER
UNITED STATES DISTRICT JUDGE

---

[12] (Rec. Doc. 11-5, at 2-3).